UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JENNIFER NANCE,

      Plaintiff,

v.                                                      Civ. No. 23-641 GJF

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Opening Brief, requesting this Court reverse the Commissioner's final decision and remand this case for further administrative proceedings. ECF 14. The issues in this case are fully briefed. ECFs 20, 21. Having meticulously reviewed the entire record and the briefing, and for the reasons articulated below, the Court **AFFIRMS** the Commissioner's final decision.

## I.  BACKGROUND

Plaintiff worked as a housekeeping cleaner until she was laid off on May 15, 2019.  TR 26, 47-49.[2] She alleged that her physical conditions, "Back Problem, Asthma, Gout," became bad enough to make her disabled the day after she was laid off. *Id.* Plaintiff then gave birth to a son two weeks later. TR 26. On October 30, 2019, when Plaintiff was 31 years old, she applied for supplemental security income, alleging only physical disabilities beginning May 16, 2019. TR

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The Citation "TR" refers to the stamped in bold transcript numbers in the attachments to the Transcript of Proceedings SS Cases [ECF 10].

260-61. She later amended her alleged onset date to the date she filed her application, October 30, 2019. TR 42, 260. Despite applying for social security benefits, Plaintiff also collected unemployment in the third quarter of 2020. *Id.* She then continued to unsuccessfully apply for unemployment benefits through the third quarter of 2021, suggesting that she held herself out as able to work. *Id.* Plaintiff's supplemental security income claim was denied at the initial level and again upon reconsideration. TR 78-87, 90-115. Plaintiff then requested a hearing, which was held before ALJ Michelle K. Lindsay on January 5, 2023. TR 17, 30, 40, 140-146. ALJ Lindsay denied Plaintiff's claim for benefits on February 8, 2023. TR 14-37. Plaintiff thereafter filed this suit challenging the ALJ's decision. ECF 1. Plaintiff does not dispute the ALJ's analysis of her *physical* impairments, which were the impetus for her application, but instead challenges only the ALJ's analysis of her *mental* impairments. *See* ECFs 14, 21.

## II.    STANDARD OF REVIEW

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.") (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show ... [she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019

(10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And ... the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotation marks omitted).

Under the substantial evidence standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the

matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

## III.   SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA uses a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[she] is not presently engaged in substantial gainful activity," (2) that "[she] has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

## IV.     PLAINTIFF'S CLAIMS

Plaintiff argues the ALJ made two legal errors in denying benefits. ECF 21 at 1. First, Plaintiff contends that the ALJ erred by not adequately accounting for and explaining the relationship between Plaintiff's moderate limitations in concentration, persistence, and pace and her residual functional capacity (RFC), limiting her only to simple work. ECF 21 at 1-5; ECF 14 at 8-11. Second, Plaintiff asserts that the ALJ legally erred by not reconciling a conflict between the RFC limiting Plaintiff to simple work and the occupations she found that Plaintiff could perform which have a GED reasoning level of two in the Dictionary of Occupational Titles. ECF 21 at 6-7; ECF 14 at 5-8.

## V.      ALJ'S DECISION

Following the five-step sequential evaluation process, the ALJ found that Plaintiff had severe physical and mental impairments, but that her impairments did not meet or medically equal any of the *per se* disabling listed impairments (the listings). TR 19-22. The ALJ utilized the agency's "special technique" (also called the psychiatric review technique) for evaluating Plaintiff's mental impairments and rated her degree of limitation in four broad functional areas known as the B criteria. TR 21-22; 20 C.F.R. § 416.920a(a), (c), (e)(4). The ALJ found that Plaintiff had moderate limitations in four of the B criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing herself. TR 21-22.

The ALJ explained the limitation in concentration, persistence, and pace as follows:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The medical evidence of record shows the claimant generally did not complain to medical providers of difficulty maintaining concentration, persistence, or pace. Mental status examination results were unremarkable (7F/3; 10F/5, 21, 28, 33; 12F/6-8), except for that of a consultative examiner who noted problems in these areas (8F/3-4). Medical providers and the physical consultative

examiner did not observe that the claimant was overly distractible or slow. The claimant reported on her Function Report that she could pay attention for a "long time" and finished what she started (6E/6). Also on the Function Report, the claimant reported doing a variety of daily tasks independently, all of which require some concentration, persistence, and pace.

TR 21. To account for Plaintiff's limitations, the ALJ constructed Plaintiff's RFC, which represents the most Plaintiff can do despite her limitations. TR 22. The RFC limited Plaintiff to performing only a reduced range of light work with the following mental limitations:

• Understand, remember, and carry out simple instructions;
• Maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task throughout a normal eight-hour workday and 40-hour workweek;
• Occasional interaction with the general public;
• Superficial interaction with coworkers and supervisors;
• No more than occasional changes in the work setting; and
• No more than occasional independent goal setting or planning.

TR 22. The ALJ explained this RFC determination and provided support for it from at least two medical opinions, one the ALJ found persuasive and the other the ALJ found partially persuasive. TR 28. The ALJ then went on to discuss for four detailed paragraphs why she found this second opinion only partially persuasive. TR 28-29. Additionally, the ALJ carefully considered Plaintiff's own testimony regarding her conditions and explained how "the claimant's statement concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." TR 24-29. The ALJ further noted "the claimant had a sporadic work and earnings history before she stopped working because of a layoff on May 15, 2019 and her conditions became severe enough the next day (2E/3) . . . . She received unemployment benefits in the third quarter of 2020 but none thereafter, despite attempts through the third quarter of 2021 (16D). This suggests she held herself out as able to work." TR 26-27.

With all of the medical and testimonial evidence in mind, the ALJ explained her RFC decision and how it accounted for the moderate mental limitations identified:

> The claimant has moderate limitation in her abilities to understand, remember, or apply information, and to concentrate, persist, or maintain pace. Thus, she is limited to understand, remember, and carry out simple instructions, and to maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task throughout a normal eight-hour workday and 40-hour workweek. The claimant also has moderate limitation in interacting with others. Accordingly, she is limited to occasional interaction with the general public and superficial interactions with coworkers and supervisors. Finally, the claimant has moderate limitation in adaptation, which is accommodated in the restrictions to work involving no more than occasional change in the routine work setting, and no more than occasional independent goal setting or planning.

TR 29. Based on this RFC, the ALJ concluded that Plaintiff could adequately perform three occupations that are in substantial demand throughout the national economy: office helper, routing clerk, and price marker. TR 30-31. All three jobs have a light exertional level to accommodate Plaintiff's physical limitations and a specific vocational preparation ("SVP") of two and General Educational Development ("GED") reasoning level of two to account for Plaintiff's mental limitations. *Id*.

The ALJ based her occupational decision on the testimony of a vocational expert. TR 60-61. The ALJ asked hypotheticals to account for Plaintiff's age, education, work experience, and residual functional capacity. TR 31. Based on all these factors, the vocational expert stated that Plaintiff would not be able to perform her previous occupation of housekeeping cleaner because it would involve pulmonary irritants. TR 60. The expert testified, however, that Plaintiff could perform the duties of an office helper, routing clerk, and mail clerk. TR 60. The ALJ then requested the expert provide a different occupation than mail clerk because it had a GED reasoning level of three; the ALJ instead suggested price marker. TR 61. The expert confirmed that price marker would fit Plaintiff's RFC and had a reasoning level of two. *Id.* Based on this testimony, which was

uncontradicted in the record, the ALJ found that Plaintiff could not perform her previous occupation but could perform three jobs that exist in significant numbers in the national economy. TR 30. Thus, the ALJ denied Plaintiff's application for disability benefits. TR 31.

## VI.    DISCUSSION

### A.  RFC and Plaintiff's Moderate Limitation in Concentration, Persistence, and Pace

Plaintiff argues that the ALJ failed to account for her moderate limitation in concentration, persistence, and pace in the RFC. Plaintiff argues the RFC limiting her to maintain attention and concentration to perform simple tasks for two-hour periods is no limitation at all according to the Program Operations Manual System, § DI 25020.01 because a normal workday is broken up into two-hour periods between arrival, break, lunch, second break, and departure. ECF 14 at 8-10.  The Commissioner responds that the ALJ did account for this mental limitation because the RFC represents the most Plaintiff can accomplish despite her mental limitations. Thus, the RFC limits Plaintiff to the maximum of simple work for only two-hour periods. The Commissioner points to two published Tenth Circuit opinions to support his position that an RFC limiting a plaintiff to simple work can account for, and does not contradict, a moderate limitation in concentration, persistence, and pace. ECF 2 at 10-13.

Two published and binding Tenth Circuit cases have concluded that ALJs can account for a plaintiff's moderate limitations in concentration, persistence, and pace by limiting the plaintiff to simple work. *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015); *Smith v. Colvin,* 821 F.3d 1264, 1268 (10th Cir. 2016). Several district court opinions have attempted to distinguish *Vigil* and *Smith* by holding that various ALJs have failed to properly explain how the RFC limiting a plaintiff to simple work accounted for the plaintiff's moderate limitations in concentration, persistence, and pace. *See, e.g.*, *D.G. v. Kijakazi*, No. 21-cv01655-NYW, 2022 U.S. Dist. LEXIS 121965, at * 32-

33 (D. Colo. July 11, 2022); *Bosse v. Saul*, No. 2:18-cv00475-LF, 2019 U.S. Dist. LEXIS 143990, at *21 (D.N.M. Aug. 23, 2019).  Rather than follow the published decisions in *Vigil* and *Smith*, these district court opinions instead looked to unpublished and non-binding Tenth Circuit cases to support this attempted distinction.

The first is *Parker v. Commissioner, SSA*, 772 F. App'x 613 (10th Cir. 2019). This decision had nothing to do with concentration, persistence, and pace, but instead involved entirely different mental limitations related to interacting with others: "Mr. Parker could not work closely [or interact regularly] with supervisors and coworkers . . . . But the agency ultimately concluded that Mr. Parker could frequently interact with supervisors and coworkers." *Id.* at 615-16.  The Tenth Circuit held that an RFC limiting the plaintiff to simple work did not adequately account for this unexplained discrepancy, involving a distinct and quite unrelated limitation—interacting with others. *Id*. at 616. Most importantly, the court distinguished *Vigil* as a case demonstrating that ALJs can account for mental limitations by limiting the claimant to particular kinds of work when either "the connection (between the limitation and the work) is obvious, [or] explain[ed]." *Id.* (citing *Vigil,* 805 F.3d at 1203-04).[3]

The second case, which Plaintiff also relies on, did not remand based on the ALJ's RFC assessment but instead remanded based on the ALJ's hypothetical questions to the vocational expert at the step five stage of the sequential evaluation process, *Carr v. Comm'r*, 734 F. App'x 606, 610-12 (10th Cir. 2018). In *Carr*, the Tenth Circuit reversed because "unlike *Vigil*, the ALJ

---

[3] Another unpublished Tenth Circuit decision on which district courts have relied was issued before *Vigil* and was contradicted by *Vigil* holding: *Jaramillo v. Colvin*, 576 F. App'x 870 (10th Cir. 2014). *Compare id.* (stating the court was not persuaded "that moderate levels of impairment do not preclude non-complex work" nor that "unskilled work is adequate to encompass a variety of moderate mental limitations"; quoting *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) for the proposition that "simple, unskilled job tasks was insufficient to incorporate moderate difficulties maintaining concentration, persistence, or pace") *with Vigil*, 805 F.3d at 1203-04 (stating "the ALJ accounted for [the plaintiff's] moderate concentration, persistence, and pace problems in [the] RFC assessment by limiting [the plaintiff] to unskilled work.").

did not explain how Ms. Carr can [perform] unskilled work with her mental limitations" in concentration, persistence, and pace. *Id.* The court considered the step-five evaluation worthy of remand because, most importantly, the vocational expert hypotheticals "contradicted the ALJ's findings" by stating "she could remain attentive and responsive" to complete "assignments satisfactorily" but also stating "that Ms. Carr could not perform [the jobs suggested by the vocational expert] if her limitation were verified because she had lots of trouble with concentration." *Id.* at 608, 611. Because the ALJ provided no explanation for how the plaintiff could perform simple work with her concentration limitations and because the vocational expert hypotheticals ignored and contradicted the ALJ's findings or concerns regarding the plaintiff's concentration limitations, the Tenth Circuit remanded for clarification on the step-five hypotheticals in this unpublished and non-binding opinion. *Id.* at 611-12.

To clarify the case law in this circuit, it is essential to not exaggerate the ALJ's burden to explain how a plaintiff's moderate limitation in concentration, persistence, and pace is accounted for by an RFC limiting the plaintiff to simple work. To be sure, the only binding cases on this topic affirm very brief ALJ explanations of how limiting a plaintiff to simple work accounts for a moderate concentration limitation. In *Vigil*, the Tenth Circuit affirmed the following limited and conclusory explanation: "at . . . step four . . . the ALJ found . . . [the plaintiff] had some problems with concentration, persistence, and pace such that he could not be expected to perform complex tasks. . . . But, the ALJ further found [the plaintiff's] normal ability to recall items . . . , spell . . . [and think] indicated that [he] retained enough memory and concentration to perform at least simple tasks."). 805 F.3d at 1203-04. The Tenth Circuit found that "the ALJ accounted for [the plaintiff's] moderate concentration, persistence, and pace problems in [the] RFC assessment by limiting [the plaintiff] to unskilled work." *Id.* In other words, the only explanation the ALJ

provided was a finding that limiting the plaintiff to unskilled work accounted for this moderate limitation, and the Tenth Circuit held this level of explanation was sufficient because limiting a plaintiff to unskilled work accounts for moderate limitations in concentration. *Id.*

Similarly, in *Smith*, the ALJ did not provide a detailed explanation of how the RFC limiting the plaintiff to simple work accounted for a moderate limitation in concentration; instead, the ALJ simply found that it did. *See* 821 F.3d at 1268-89 (the medical expert opined "that Ms. Smith was moderately limited in her ability to maintain concentration, persistence, and pace . . . [and] applied these assessments, concluding that Ms. Smith could . . . engage in work that was limited in complexity . . . . The administrative law judge arrived at a similar assessment, concluding that Ms. Smith . . . could engage in only simple, repetitive, and routine tasks."). The Tenth Circuit went on to cite *Vigil* for the proposition that "in our circuit . . . [ALJs] account[] for the claimant's moderate concentration, persistence, and pace problems in [the RFC assessment] by limiting the claimant to unskilled work." *Id.* Both binding Tenth Circuit opinions conclude that an ALJ's decision is sufficiently supported when the ALJ finds that limiting the plaintiff to simple work adequately accounts for the moderate limitation in concentration, persistence, and pace.

In this case, the ALJ explained how Plaintiff's moderate limitation in concentration, persistence, and pace was accounted for by the RFC limiting her to only being "able to understand, remember, and carry out simple instruction . . . [and] maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task throughout a normal eight-hour workday and 40-hour workweek." TR 22. The ALJ also explicitly explained how this RFC accounted for the limitation: "[t]he claimant has moderate limitation in her abilities to understand, remember, or apply information, and to concentrate, persist, or maintain pace. Thus, she is limited to understand, remember, and carry out

simple instructions, and to maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection to task throughout a normal eight-hour workday and 40-hour workweek." TR 29.

The ALJ supported this finding and explanation with at least two medical opinions, one the ALJ found persuasive and the other the ALJ found partially persuasive. TR 27-29. The ALJ then went on to discuss for four detailed paragraphs why she found the second opinion only partially persuasive. TR 28-29. The ALJ further noted "the claimant had a sporadic work and earnings history before she stopped working because of a layoff on May 15, 2019 and her conditions became severe enough the next day (2E/3) . . . . She received unemployment benefits in the third quarter of 2020 but none thereafter, despite attempts through the third quarter of 2021 (16D). This suggests she held herself out as able to work." TR 26-28.

Plaintiff's argument that the RFC does not at all account for her limitation in concentration because it is not a limitation at all is simply unsupported by binding precedent and the record. The Tenth Circuit has stated in two published opinions that ALJs can account for *moderate* limitations in concentration, persistence, and pace by limiting a plaintiff to simple work. Further, the RFC specifically stated how long Plaintiff can adequately concentrate on *simple* tasks throughout a normal workday and explicitly described the connection between Plaintiff's moderate mental limitation in concentration and the related RFC. This is a sufficient explanation in our circuit.

In her Reply, Plaintiff attacked the RFC's accommodation of her *other* mental limitations. ECF 21 at 5. Because Plaintiff failed to raise these arguments in her opening brief, however, she deprived the Commissioner of the opportunity to respond to them. Accordingly, the Court concludes that Plaintiff has waived the additional arguments raised only in her Reply. *See Tran v. Trustees of State Colleges in Colorado,* 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised

in the opening brief are deemed abandoned or waived.") (citations omitted). Additionally, the Court finds the RFC also accounted for Plaintiff's other limitations, like the ability to interact with others or maintain and adapt to changes in schedule:

> The claimant also has moderate limitation in interacting with others. Accordingly, she is limited to occasional interaction with the general public and superficial interactions with coworkers and supervisors. Finally, the claimant has moderate limitation in adaptation, which is accommodated in the restrictions to work involving no more than occasional change in the routine work setting, and no more than occasional independent goal setting or planning.

TR 29. Finally, the Court notes that the mere inclusion of other moderate mental limitations does not distinguish *Vigil* or *Smith* because the plaintiffs in those cases also had other mental limitations along with their deficiencies in concentration, persistence, and pace. *Vigil*, 805 F.3d at 1201 (stating the plaintiff had major depressive disorder and anxiety leading to an RFC of simple work and not dealing with the general public); *Smith*, 821 F.3d at 1268 (listing an expert's findings of limitations in concentration, working with others, completing a normal workday, accepting instruction, getting along with coworkers, and adapting to changes in workplace).

For all of these reasons, the Court finds that the ALJ properly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace by limiting her to only being able to understand, remember, and carry out simple instructions and maintain attention and concentration to perform and persist at simple tasks at a consistent pace for two hours at a time without requiring redirection.

### B. Discrepancy Between the Dictionary of Occupational Titles and the Vocational Expert's Testimony

Plaintiff argues that there is an inherent discrepancy between the RFC's limitation to simple work and the jobs the vocational expert suggested, which the Dictionary of Occupational Title states require a reasoning level of two. ECF 14 at 8-9. Plaintiff contends that this discrepancy is contradictory because reasoning level two jobs require applying "commonsense understanding to

carry out *detailed* but uninvolved *written or oral instructions*." *Id.* at 9 (citing *Dictionary of Occupational Titles,* App. C., Part III). The Commissioner responds that simple and unskilled work is not inherently contradictory to jobs requiring a GED reasoning level of two and that the ALJ's vocational findings were supported by substantial evidence. ECF 20 at 17.

The binding Tenth Circuit case related to this issue, which both parties cite, is *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005). This case held that reasoning level *three* jobs were inconsistent with an RFC limiting a plaintiff to "simple and routine work tasks." *Id.* at 1176. However, the Tenth Circuit noted "level-two reasoning appears more consistent with" an RFC limiting Plaintiff to simple work. *Id.* In a later unpublished decision, the Tenth Circuit emphasized that "*Hackett v. Barnhart* . . . held that a limitation for simple and routine work tasks was inconsistent with the demands of level-three reasoning *but consistent with the demands of level-two reasoning*." *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (emphasis added) (internal quotes omitted). Finally, a more recent unpublished case from the Tenth Circuit applied *Hackett* to remand a case based on the apparent conflict between the plaintiff being able to engage in "level-*three* reasoning" while he was limited to "simple and routine work tasks." *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016). In this unpublished case—without citing *Stokes*—the court stated that it had not spoken to whether a limitation to simple work was inconsistent with level-two reasoning. *Id.*.[4]

---

[4] *Paulek* also mentioned one out of circuit case that held there was a conflict between simple work and level two reasoning. 662 F. App'x at 59. However, other circuits hold there is no conflict between these findings. *See, e.g., Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021) ("There is not an apparent conflict here between Buckwalter's RFC, which limits her to the ability to 'understand, carry-out, and remember simple instructions,' and the identified positions with a reasoning level of two.").

Both parties then cite New Mexico district court opinions to support their conflicting positions regarding whether there is an inherent conflict that must be explained between a simple work RFC and reasoning level two jobs. Plaintiff cites two New Mexico district court opinions that hold there is an apparent conflict that needs to be explained. ECF 21 at 6-7 (citing *Martinez v. Kijakazi*, No. 20-1024 JFR, 2022 U.S. Dist. LEXIS 97429, at *19 (D.N.M. June 1, 2022) and *Flores v. Berryhill*, No. 16-279 KK, 2017 U.S. Dist. LEXIS 84866, at *25 (D.N.M. June 2, 2017)). In contrast, the Commissioner cites to five New Mexico district court opinions holding there is no inherent conflict. ECF 20 at 18-18 (citing *Roper v. Saul*, No. 18-CV-549-GJF, 2019 WL 4394049, at *14-15 (D.N.M. Sept. 13, 2019); *Tenorio v. Berryhill*, No. 17-CV-138-SCY, 2018 WL 6594228, at *15 (D.N.M. Dec. 14, 2018); *Adolph v. Berryhill*, No. 17-CV-00191-KBM, 2018 WL 1415182, at *9-10 (D.N.M. Mar. 21, 2018); *Kerr v. Berryhill*, No. 16-CV-799-GJF, 2017 WL 3531506, at *14 (D.N.M. Aug. 16, 2017); *Sorge v. Berryhill*, No. 16-CV-64-GJF, 2017 WL 3822077, at *12-13 (D.N.M. Aug. 30, 2017)).

This Court stands with the majority approach in this District and holds that there is no inherent conflict between an RFC limiting a plaintiff to simple work and a finding that the plaintiff can perform level two reasoning jobs. This approach is most in line with Tenth Circuit case law because the Tenth Circuit explicitly stated this was not a conflict in *Stokes,* did not speak to this issue in *Paulek*, and—most importantly—in its binding decision in *Hackett*, noted that "level-two reasoning appears more consistent with" an RFC limiting a plaintiff to simple work.

In this case, the ALJ found that Plaintiff, with all her physical and mental limitations in mind, could adequately perform three different occupations in substantial demand throughout the national economy: office helper, routing clerk, and price marker. TR 30-31. All three jobs have a light exertional level to accommodate Plaintiff's physical limitations and an SVP of two and GED

reasoning level of two to account for Plaintiff's mental limitations. *Id*. The ALJ asked hypotheticals of the vocational expert to account for Plaintiff's age, education, work experience, and RFC when making her findings. TR 31. More importantly, the ALJ specifically and intentionally limited Plaintiff to a GED reasoning level of two when choosing which occupations she could adequately perform. TR 61 (specifically requesting the vocational expert suggest a different occupation than mail clerk because it had a reasoning level of three). It is clear from the record that the ALJ was considering and asking specific hypotheticals to account for all of Plaintiff's limitations, including the RFC limiting Plaintiff to simple work, when determining which occupations she could perform. Finally, the expert's testimony opining that Plaintiff could perform these occupations was uncontradicted in the record. Thus, the ALJ conducted a thorough analysis, had substantial evidence supporting her determinations, and did not commit legal error. *See Stokes*, 274 F. App'x at 684 (citing *Hackett*, 395 F.3d at 1176).

**VII.    CONCLUSION**

For the foregoing reasons, the Court holds that the ALJ's decision was supported by substantial evidence and applied the correct legal standards.

**IT IS THEREFORE ORDERED** that Plaintiff's request for reversal and remand for rehearing [ECF 14 at 11] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED.**

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*